Good morning, Your Honors. May it please the Court. Vivian Phu on behalf of Petitioner Appellant Cesar Villegas. This is an appeal from the denial of a 2254 petition governed by the AEDPA. Mr. Villegas filed his first habeas petition in 2008, but this Court granted him permission to file a second habeas petition based on the Supreme Court's decision in Johnson v. United States. He is currently serving a sentence of 31 years to life, of which 25 years to life is mandated by the jury's true finding on the aggravated kidnapping enhancement at issue in this appeal. So I'm going to start briefly with the limitations issue that Respondent raises for the first time on appeal. Respondent has waived the statute of limitations defense. When Mr. Villegas first requested permission to file an SOS petition based on Johnson, Respondent filed a response in this Court acknowledging that Johnson announced a new constitutional rule that was retroactive on collateral review and conceded that this Court should grant Petitioner leave to file an SOS petition regarding Ground 5, which is the vaguest claim on appeal. And furthermore, after the District Court ordered Respondent to file a response to the 2254 petition, he filed a motion for reconsideration contending that Grounds 4 and 6 were untimely, but again, specifically stating that, quote, Respondent does not dispute that Respondent should respond to Ground 5, and that's at docket number 22 below. And in response, the District Court only analyzed the timeliness issue with respect to two of the claims, Grounds 4 and 6, and not with respect to his vagueness claim. Respondent never filed objections to the R&R or raised the timeliness issue with respect to Ground 5 in any manner until this Court actively conceded below that there was no timeliness issue with respect to this claim. So accordingly, he's waived the statute of limitations defense and cannot raise it now for the first time on appeal. Is there not any exception to that waiver? I don't believe so in this case. Well, what I'm asking is, looking at the exceptions to the doctrine you've now put in front of us, is there any exception that your opposition can suggest that would be an exception to this doctrine you've put before us? I mean, I look at the waiver exceptions, and it seems to me there is one. So I'm trying to get you to think about it. Well, I guess I wouldn't agree. I mean, the honest truth is, why is this not a question of law? I mean, we have a Blackstone case, 903-Fed 3rd, which says right in it that Johnson does not recognize a new right applicable to mandatory sentencing guidelines on collateral review, and says right in there that the motion was then barred by the statute of limitations. We've got that on our books. It seems to be a question of law. So while I look very carefully at your waiver question, I said to myself, why is it that that is not something I can do on appeal, even if not presented to the district court? And if it's a question of law, I can consider it. And that's why I'm asking you, why is it that it isn't a question of law? Well, I think the difference is that the respondent affirmatively waived. Well, whether they affirmatively waive or whether they waive because they don't say anything about it, if in fact the new law, I mean, come to the second point, is Blackstone coming out of our court, which now has to decide what Johnson is going to do, and we necessarily suggest that we are doing it the way the Supreme Court would do it, isn't that a new way to look then at Johnson and whether it really does do what you're now suggesting it does or what the government is suggesting it does? I think it would be one thing if the respondent just hadn't brought it up. What's your best case for that? Because I didn't find that. If you give me one, I'll look at it and look at it hard. Okay, I will. It seems, I mean, I'm one who, if you're not going to say something about this to the district court, why are you saying it to me? But then there are all these, if you will, exceptions. And the big exceptions that I have is one, it is a question of law, and two, when we came down with Blackstone and the Supreme Court has never said anything different about Johnson, I mean, nobody is suggesting that Johnson gives a new right. And so, therefore, the government was whistling Dixie below. There isn't any new right out of Johnson. Yeah, I would just have to fall back on that. I mean, I will look for the case and get back to you on that. Okay, thank you. Why don't you turn to the merits? Okay. With respect to the merits, the certified claim on appeal is whether the aggravated kidnapping enhancement set forth in Penal Code 667, 61D2 is unconstitutionally vague. So this enhancement requires that the victim is kidnapped and that the movement substantially increase the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense. So in order to figure out how, you know, whether the movement of the victim actually resulted in a substantial increase in the risk of harm over the risk in the underlying sexual assault, the jury necessarily has to estimate the amount of risk posed by a standstill or hypothetical crime that never took place. Well, not a hypothetical crime. It's not, doesn't suffer, seems to me the analysis under this enhancement doesn't suffer from the analysis that had to be done under the residual clause because you're talking about the increased risk with respect to this specific set of facts. But they're talking about a sexual, okay, so the sexual assault that occurred was, you know, by a tree. So they're talking about compare that against the risk of a sexual assault that occurred at some point before the kidnapping movement. And in Villegas' specific case, he wasn't convicted of kidnapping with the intent to commit rape. So he was convicted of the lesser included of simple kidnapping and then rape. So then the question is where does that hypothetical crime that happened before the movement, when did that actually happen? Did that happen at the bus stop when it was just the two girls, you know, at night? Did that happen in the car after they voluntarily got into the car? By the whole course of conduct. Sorry? By the whole course of conduct. The whole course of conduct? From the beginning of taking the girls into the car under the spurious offer for a ride home and then imprisoning them in the car while they went off on a chase and finally ending up in a secluded neighborhood where the girls didn't live and where they were more prey to their attacker. That's not a way of enhancement of risk? The neighborhood that they went to was a populated neighborhood with residents around and, in fact, when one girl started yelling, a resident immediately came out and helped her and called the police. So it was isolated. Not in time. Sorry? Not in time. Not at the time. She was raped. So arguably where they were coming from, like inside of the car or the bus stop, was riskier than where she ended up. And I think because he wasn't convicted of kidnapping with the intent to commit rape, it's difficult to figure out exactly when the movement that the jury's supposed to be looking at, where that kidnapping movement started. She went into the car voluntarily, so it would have been at some point during the car ride. So arguably if she had been raped inside the car with no one to hear her or see her, that was more risky than what ended up happening. During the car ride, she asked to be taken home. She didn't want to go with them anymore. She saw that they had been false in what they said. Yes. From that point on, at least, there's a kidnapping. Yes. Presumably, yes. From that point on until, yeah, the end of the car ride when they were let out. And the kidnapping, the court found, increased the danger of the rape. She raped four times. Yes. She was forced to commit for last year two times. Right. One was an attempted rape and one was a real rape, a full rape. Yes. So pretty bad stuff. I think to add, compounding the issue in this case was that the jury was never instructed specifically on the elements of this kidnapping enhancement. So that. Is that in front of us? Well, that's part of the uncertified. Oh, I think you're getting to the non-certified issue. Yeah. All right. I'm just throwing that in as a complication to this issue. Why don't we hear from the government and then we'll give you some time for rebuttal. Thank you, Your Honor. Deputy Attorney General Michael Katz, correspondent. I'm going to move to the merits, if I may. And the Los Angeles County Superior Court reasonably rejected this claim on the merits. Because this is not a First Amendment issue and because my stepping, am I too close to the microphone? I couldn't tell. No, no, no. Okay. I just can't see you if it's up too high. Okay. Because it's not a First Amendment issue and because it's not an exceptional circumstance, petitioner must prove that it's vague based on the facts as applied to him. And it's not. Even if we assume, as petitioner argues in the reply brief, that the movement began at the bus stop, it was not an isolated bus stop, as petitioner asserts in the reply brief. On page 943 of the trial transcript, a police officer testified that it's a major intersection in Los Angeles County where the bus stop is. So we go from a major intersection. They drive the victim and her friend past the police car at the traffic light where they could have gotten help and prevented the rape. They go past that. And even though they're saying, take us home, we don't want to go, they take them to a neighborhood. It's true it's a residential neighborhood, but it's getting darker. It's between 930 and 1030 when it happens, according to the trial testimony. And the victim's friend, Daniela M., testified that it was getting more dangerous and darker there. Even petitioner testified, although he said it was consensual. He said the sexual activity occurred behind a tree in that neighborhood. He told them that the one man they saw outside was his friend. We don't know whether that's true, but we know he told them, which would cause them to be fearful of seeking help from him. It is true that eventually, after the friend got stuck on the fence and called for help and said that the victim was being assaulted, at that point a man who didn't know about this before responded to the yelling of the victim's friend and helped. But this is precisely the kind of conduct that the California Supreme Court talked about in Dominguez and before that Daniels and said, if it's more difficult for the victim to escape, if it helps the defendant commit the crime, it's a substantial increase in the risk of harm to the victim. And this is no more vague than the term particularly serious felony that a different panel of this court held last year was not vague. It was a post-Johnson analysis. It's not more vague than the term substantial risk, which Johnson said in its reasoning, is not vague if it's tied to the facts of the case. Can I just ask you about this? Yes. The court of appeals decision in Jones? Yes, Your Honor. So it seems inconsistent with what came later, but it's still there. Do we just say that it doesn't accurately reflect what California law is today? We say a couple things, Your Honor. First of all, Daniels, which was a 1969 state Supreme Court opinion, which we also cited, conflicts with Jones, arguably. So to the extent that Jones is saying something different that would assist the petitioner, it's not the relevant law. And a reasonable person in a petitioner's position who wanted to know whether this egregious conduct constituted aggravated kidnapping rather than simple kidnapping would be responsible for looking at Daniels as well as the statute, the state Supreme Court opinion. Now, as to what Jones said, it was talking about a harmless error analysis. It wasn't talking about the substance of the law. And although it did use the term hypothetical, it was calling it a hypothetical standstill robbery or rape, which is similar to the language of the statute. It's not really, although it doesn't say hypothetical in the statute. I don't think fundamentally the problem is that it's a hypothetical. It's a vague hypothetical in Johnson because the court says, what are we to make of this? So it was two things, a vague hypothetical not tied to readable facts. Here we have the facts of the case itself, not abstract facts, imaginary facts. We also have something that's not vague. It's not difficult to understand what it means when you don't move the victim. You compare that to a movement. That's not vague. So even if Jones were the relevant case and it's not, it's still not vague. Your opponent argues that what complicates things here is that because the jury found him not guilty of, I'm going to get the things mixed up, but there's kind of the kidnapping with intent to rape offense where, I mean. I know which way. Yeah. When she first got in the car, at least according to the jury's verdict, he wasn't necessarily intending to rape her at that point. There's kind of an inconsistency in the jury's verdict here, isn't there? There's an inconsistency. I'm not sure that it could. I mean, as this court has said and the Supreme Court has said on other occasions, when we look at inconsistent verdicts or two verdicts that are internally inconsistent, we don't say, well, one invalidates the other. We say that could be a mistake. It could be leniency, which is quite common. So there's no basis for taking that and calling the statute vague. I mean, the question is really a matter of vagueness, not substantial evidence. I mean, as this court said in Edge in July, and I filed a 28-J letter on that, if there's a problem with the amount of evidence compared to a legal standard that's clear, that's a sufficiency claim. If the legal standard is not clear, that's a vagueness claim. So whether a jury thinks there was enough evidence for something doesn't impact the vagueness claim. And unless the court has any questions, I will submit the matter. Okay. Thank you. Thank you. Let's put two minutes on the clock for counsel for petitioner. I want to quickly respond to the People v. Jones and the People v. Daniels issue. So in People v. Jones, the court did specifically say, admittedly, the theory, in theory, the risk is to be compared on the one hand to a risk inherent in a standstill robbery and on the other to a risk inherent in a standstill robbery. I'm not hearing you. Could you speak? Oh, I'm sorry. I'm sorry. In Jones, the court specifically compares the risk on the one hand to the risk inherent in a standstill robbery or standstill sexual offense. And it specifically states we are not speaking of some particular robbery or sexual offense, but rather of a hypothetical, typical robbery or sexual offense. And so they were – Do you think that's true of rape? I think that's what People v. Jones was speaking to in respect to the comparison between a – into figuring out whether there was a substantial increase in risk, comparing it to the rape where there was no movement and then the rape with – where the movement caused – movement contributed to a substantial increase of risk to the victim. So what's vague? I think the vagueness would be the baseline that you're coming from. And where is that baseline? The rape? The rape? The rape? Is that the baseline? Well, the rape without – the issue isn't whether there was a rape. That's not contested. There was a rape. The issue is whether the movement contributed to a substantial increase in the risk of harm to the victim. So that – so – And that, as a matter of fact, by the judge in sentencing, makes this reversible. Is that your point? I'm just addressing the People v. Jones. How People v. Jones is – how the California appellate courts are looking at the determination of the substantial element of risk. And it doesn't conflict with Daniels because Daniels is the one that came up with it. The standstill language actually comes from Daniels. And so I don't think it's a conflict. It's just Daniels doesn't go into that much detail about how the determination should be made. Okay. Thank you, counsel. The case just argued is submitted.
judges: N.R. Smith, Watford, Hellerstein